UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JULIANA RODRIGUEZ MOREL | |
| f/k/a JULIANA MOREL MARIANO, | |
| Plaintiff | |
| v. | JURY TRIAL REQUESTED |
| CREDIT ADJUSTMENTS INC. | |
| d/b/a CAI of Ohio | |
| Defendant | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

## I.    INTRODUCTION

This is an ADAA, Title VII, RSA 354-A, and wrongful discharge case.  Plaintiff Juliana Rodriguez Morel suffered debilitating pregnancy symptoms at work, including bleeding, headaches, nausea, and vomiting.   Ms. Rodriguez Morel had to take intermittent leave from work due to her symptoms.  Defendant Credit Adjustments, Inc. (Ms. Rodriguez Morel's employer) disciplined and ultimately terminated Ms. Rodriguez Morel for taking the leave.  When Ms. Rodriguez Morel demanded a termination letter, to aid in proving that she had been terminated due to her pregnancy, Credit Adjustments, Inc. (only then) offered reinstatement, and significantly its offer came without any accommodation under its attendance and discipline policies to Ms. Rodriguez Morel's pregnancy or pregnancy-related medical conditions.  Ms. Rodriguez Morel therefore reasonably understood, that if she accepted reinstatement, she would continue to suffer discipline and she would again be terminated

1

due to her pregnancy.  In lieu of suffering a second termination, she filed a charge of discrimination and now files this complaint.

## II.   PARTIES

1.      The Plaintiff, Juliana Rodriguez Morel ["Ms. Rodriguez Morel"] resides in Manchester, New Hampshire.

2.      Defendant, Credit Adjustments, Inc. ["CAI"], is a foreign profit corporation with a principal office in Defiance, Ohio, doing business in New Hampshire as CAI of Ohio.

3.      CAI operates branch offices in California and in Manchester, New Hampshire, and it employs greater than five hundred employees.

4.      CAI is a "receivables management" company known for healthcare and student loan collections.

5.      CAI has a contract for federal student loan collections requiring it to take affirmative action to recruit, hire, promote, and retain individuals with disabilities.  See 29 U.S.C. § 793.  See 41 C.F.R. § 60-741.44.

## III.   JURISDICTION AND VENUE

6.      This Court has jurisdiction over Ms. Rodriguez Morel's ADAA and Title VII claims under  28 U.S.C. § 1331, providing for district court jurisdiction over civil actions arising from the laws of the United States.

7.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Ms. Rodriguez Morel's RSA 354-A and wrongful discharge claims.  The state law claims so relate to the ADAA and Title VII claims that they form the same case or controversy.

8.      Alternatively, this Court has jurisdiction over the state law claims under 28 U.S.C. § 1332 (a)(1).  The claims in controversy each exceed the sum or value of $75,000, exclusive of interest and costs, and each is between citizens of different States.

9.      This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391(b)(2) because the Plaintiff's injuries occurred in New Hampshire.

**IV.     STATEMENT OF FACTS**

        **A.     <u>Background</u>**

10.     Ms. Rodriguez Morel was employed by CAI under her former name, Juliana Morel Mariano.

11.     Prior to her hire, Ms. Rodriguez Morel disclosed to CAI that she had a disability, which was diagnosed depression and anxiety.  <u>See</u> Exhibit A.

12.     CAI employed Ms. Rodriguez Morel as an "Administrative Team Member" in its Manchester office, from approximately August 27, 2018 until February 11, 2019.

13.     Ms. Rodriguez Morel's duties included maintaining collection accounts.

14.     Ms. Rodriguez Morel worked full time and was scheduled to work 8AM to 5PM, on Mondays, Wednesdays, and Fridays, and 12PM to 9PM, on Tuesdays and Thursdays.

15.     Ms. Rodriguez Morel was a conscientious employee who received superior performance evaluations which she stored in her locker at work.

        **B.     <u>CAI's "No Fault" and "Call In" Attendance Policies</u>**

16.     While CAI employed Ms. Rodriguez Morel, CAI had a "no fault" attendance policy.  <u>See</u> Exhibit B.

17.     Under the "no fault" policy, CAI counted "occurrences" of employee absence from work.  An "occurrence" was counted <u>regardless of the reason for absence</u>, with the only exceptions being for absence due to work-related illnesses or injury, or absence permitted under the Family Medical Leave Act or the Americans with the Disabilities Act.  <u>See</u> <u>id.</u>

18.     The policy did <u>not</u> exempt from penalty absences permitted by *state* law.  <u>See</u> <u>id</u>.

19.     Under the "no fault" policy, two consecutive workday absences taken <u>for the same reason</u> (that was not work-related or was not permitted by the FMLA or ADAA) were counted as a <u>single</u> occurrence.  <u>See</u> <u>id.</u>

20.     "An occurrence of three consecutive days or more" required medical verification and/or a request for leave of absence.  <u>See</u> <u>id</u>.

21.     Employees were advised that "repeated occurrences" would result in them being placed "on the Company's Disciplinary Program."  <u>See</u> <u>id</u>.

22.     CAI additionally had a "call in" policy requiring employees to notify CAI of their anticipated absences.

23.     In advance of absence, employees were to call in to a dedicated attendance line at CAI headquarters and identify themselves, the date or dates of their anticipated absence, and the reason for their absence.

24.      Employees generally left this information in voice mail messages to the dedicated line.

   **C.     Ms. Rodriguez Morel's Pregnancy Symptoms and Their Effect on Her Ability to Work**

25.     On December 10 and 11, 2018, Ms. Rodriguez Morel sought medical care for abdominal pain and vaginal bleeding.  Her providers confirmed she was approximately seven weeks pregnant and cautioned that she was at risk for miscarriage.

26.     Ms. Rodriguez Morel relayed this information to her friend and direct supervisor, Suzanne Guzman.  She asked Ms. Guzman whether she should report her condition to CAI upper management.  Ms. Guzman suggested that Ms. Rodriguez Morel <u>wait to disclose her pregnancy</u> to upper management because she suspected that <u>management would be displeased to learn of the pregnancy</u>.

27.     On Monday, December 17 and Tuesday, December 18, 2018, Ms. Rodriguez Morel worked partial days.

4

28.     On Thursday, December 20, 2018, Ms. Rodriguez Morel was suffering from a pregnancy-related headache at work and needed to go home but didn't, because she was afraid to leave work without knowing her "occurrence" total.  She contacted Stacy Morrision, a Human Resources Administrator at headquarters in Ohio, to ask for her total.

29.     The following day, on December 21, 2018, Ms. Morrison reported to Ms. Rodriguez Morel that she had accrued one occurrence.  See Exhibit C.

30.     On or about that same day, Friday, December 21, 2018, Ms. Rodriguez Morel told Ms. Guzman that she was experiencing debilitating "morning sickness," including headaches, nausea, and vomiting. Anticipating her inability to work due to these symptoms, Ms. Rodriguez Morel asked Ms. Guzman about CAI's maternity leave policies.

31.     Ms. Guzman advised Ms. Rodriguez Morel that she might be entitled to leave time due to her pregnancy symptoms, and she suggested consultation with "Doug," the Manchester office's Human Resources contact.

32.      Ms. Guzman took vacation leave, from December 26 to 28, 2018, and in her absence Steven Snarski supervised Ms. Rodriguez Morel.

33.     On Wednesday, December 26, 2018, Ms. Rodriguez Morel became violently ill at work with a severe headache, recurrent nausea, and vomiting.  Ms. Rodriguez Morel was not permitted to have a trash can at her work area, so she had to repeatedly get up and run to the bathroom to vomit.

34.     Ms. Rodriguez Morel decided to inform Mr. Snarski that she was pregnant and very ill due to her pregnancy.  She identified her symptoms and asked to go home.  Mr. Snarski instructed Ms. Rodriguez Morel to email both Ms. Guzman and Administrative Manager, Lauren Cochrane, as to her need to leave work before leaving work.

35.     Remembering Ms. Guzman's concern about disclosing her pregnancy to management, Ms. Rodriguez Morel sent an email identifying her symptoms but not specifically her pregnancy.  See

Exhibit D.  Ms. Rodriguez Morel next left work, and called out sick on Thursday, December 27 and Friday, December 28, 2018, following "call in" protocols for these days.  She reported to the attendance line that she needed to remain out of work because her symptoms from the 26th persisted.

36.      Though she was still quite ill with vomiting, Ms. Rodriguez Morel returned to work on her next scheduled workday, Monday, December 31, 2018.  She again found herself frequently having to leave her work station to vomit in the ladies room.  Her vomiting, at times, was so loud that other workers noticed and inquired into her well-being.

37.      On one occasion Ms. Rodriguez Morel was walking back to her work area and supervisor Cochrane stopped her and asked whether she was okay.  Ms. Cochrane mentioned that an employee had notified her that Ms. Rodriguez Morel was vomiting in the bathroom.

38.      Ms. Rodriguez Morel initially replied only that she was "fine."  However, as her vomiting continued throughout the day, Ms. Rodriguez Morel felt compelled to explain her behavior in running to the bathroom.  Accordingly, Ms. Rodriguez Morel disclosed to Ms. Cochrane, she was pregnant and that she was suffering from severe morning sickness, including headache, nausea and vomiting.

39.      Ms. Cochrane offered little support or suggestion other than to ask Ms. Rodriguez Morel whether she was sure she was pregnant because, she said, "birth control pills can sometimes cause pregnancy tests to be false positive."

40.      Ms Rodriguez Morel left Ms. Cochrane's office humiliated and anxious, but she worked her next scheduled workdays, vomiting throughout, because she understood she had to, to keep her job.

41.      On Tuesday, January 8, 2019, Ms. Rodriguez Morel was at work, continuing to experience vomiting and abdominal pain, when she also noticed blood in her urine.

42.      Very alarmed, she reported these symptoms to Ms. Cochrane who allowed her to leave work to go to the hospital.

43.     At the hospital, Ms. Rodriguez Morel was treated with an anti-nausea injection and tested for urinary tract and kidney conditions.   After determining her symptoms stemmed from her pregnancy, doctors discharged Ms. Rodriguez Morel with a doctor's note taking her out of work until Friday, January 11, 2019.  See Exhibit E.

44.     Ms. Rodriguez Morel was thus absent from work on Tuesday, January 8; Wednesday, January 9; and Thursday, January 10, 2019.  The absence on the 8th had been authorized by Ms. Cochrane.  For the absences on January 9 and 10, Ms. Rodriguez Morel notified of her absences on the attendance line by, calling in on the 9th and advising that she was suffering illness related to her "pregnancy" and that she would be out of work under doctor's orders until the 11th.

45.     From this point forward, when Ms. Rodriguez Morel called the attendance line to report pregnancy-related absences, she clearly advised that she was "pregnant" and that she was suffering illness related to her "pregnancy."  Moreover, whenever Ms. Rodriguez Morel was taken out of work by her doctors for her symptoms expected to last several days, she reported her multiple anticipated absences on only the first day of her anticipated absence period.

46.     At no time did any CAI employee advise Ms. Rodriguez Morel that it was against CAI policy for her to report her entire anticipated period of absence on only the first day of absence, nor did any CAI employee advise Ms. Rodriguez Morel that she was required to call in to the absence line each day of an absence period.

### D.     Ms. Rodriguez Morel Suffers First and Second Written Warnings Due to Her Pregnancy-Related Incapacity and Absences

47.     Ms. Rodriguez Morel returned to work on Friday, January 11, 2019 and gave her doctor's note to Ms. Cochrane.  See id.  Later that day, she was called to a meeting with Ms. Cochrane and Michelle McNeil, CAI Vice President of Contract Administration, wherein Ms. Cochrane issued Ms. Rodriguez Morel two written warnings.

48.     The first warning was for 3.5 "occurrences" deriving from absences as far back as December 17, 18, 26, 27, and 28.  See Exhibit F.  Notably, the warning tallied *2.5* occurrences for absences on the 26th, 27th, and 28th.

49.     The second written warning was for a single occurrence deriving from absences on January 8 and 9.  See Exhibit G.

50.     Applying its policy properly (and blindly) in considering the first warning, CAI should have had tallied just 1.5 occurrences for Ms. Rodriguez Morel's absences on the 26th, 27th, and 28th: .5 for the 26th, and 1 for the 27th and 28th.  The no fault policy specified that absences on two consecutive workdays for the same underlying reason (e.g. on the 27th and 28th) should count for just one occurrence.

51.     After reviewing the warnings, Ms. Rodriguez Morel questioned why she received them for absences related to pregnancy complications.  Ms. Cochrane explained that for absences to not give rise to "occurrence" and warnings under the "no fault" policy, Ms. Rodriguez Morel would have had to have obtained medical verification for leave "for three days."

52.     Remarkably, Ms. Rodriguez Morel, did have a doctor's note covering absences for three workdays - January 8, 9 and 10.  See Exhibit E.   Despite CAI's policy exempting Ms. Rodriguez Morel from occurrence and discipline, and Ms. Cochrane's awareness and approval of Ms. Rodriguez Morel's pregnancy-related hospital visit on January 8, 2019, Ms. Cochrane nevertheless counted 1 occurrence for Ms. Rodriguez Morel's absences on January 8 and 9 (ignoring the 10th) and issued the second warning based on that occurrence.  See Exhibit G.

53.     Further explaining the warnings, Ms. McNeil interjected her beliefs that New Hampshire was a "no fault state" and that this meant there was "no good or bad reason for not coming to work under the law."

54.     Ms. Cochrane offered a "no fault" example, stating: "It's like when I locked my keys in my car at Dunkin Donuts and was late to work.  I was not excused for my lateness."

55.     Ms. Rodriguez Morel responded that her situation was different because she had to leave work to go to the hospital because she was pregnant, in pain, bleeding, and potentially miscarrying.  Her supervisors answered that <u>none</u> of these excused an employee from discipline under the "no fault" policy.

56.     Ms. Rodriguez Morel emailed Ms. Morrison at CAI headquarters to determine if Ms. Cochrane's and Ms. McNeil's information was accurate.    Ms. Morrison confirmed that, in CAI's view, Ms. Rodriguez Morel had no pregnancy-related leave entitlement, and that she could be disciplined under the "no fault" attendance policy if supervisors prohibited her from taking leave and she took leave for pregnancy reasons.  <u>See</u> Exhibit H.

### E.     Ms. Rodriguez Morel Receives a Final Written Warning Due to Her Pregnancy-Related Incapacity and Absence

57.     On Friday, January 18, 2019 Ms. Rodriguez Morel had been extremely ill for two days.  She called out of work complying with CAI's protocols, including by advising of her pregnancy-related symptoms, and she again sought care in an emergency room.

58.     Ms. Rodriguez Morel was again diagnosed with vomiting, headache, and lower abdominal pain due to pregnancy.  She was given a doctor's note removing her from work for <u>four</u> days or until January 22, 2018.  <u>See</u> Exhibit I.  On the very next workday, Monday January 21, 2019, Ms. Rodriguez Morel called the attendance line to advise of her medically recommended absence from work, <u>due to pregnancy-related illness, until Tuesday, January 22, 2019</u>.

59.     Ms. Rodriguez Morel returned to work on Tuesday, January 22, 2019 and emailed her doctor's note to Ms. Guzman and Ms. Cochrane, stating explicitly her pregnancy, her symptoms, and her hospitalization for these symptoms.  <u>See</u> Exhibit J.

60.     Ms. Rodriguez Morel did not anticipate discipline related to this leave, relying on Ms. Cochrane's representation that leave for three days or longer with medical verification would <u>not</u> result in occurrence or discipline.   Nevertheless, Ms. Cochrane issued Ms. Rodriguez Morel a "final written warning" due to an occurrence being levied for absences on Friday, January 18 and Monday, January 21.  <u>See</u> Exhibit K.

61.     Ms. Rodriguez Morel asked Ms. Cochrane why she received an occurrence and discipline for her absences on Friday, January 18 and Monday, January 21 when her doctor's note removed her from work for greater than three days (January 18, 19, 20 and 21).  Ms. Cochrane responded that an occurrence was counted and discipline issued because only two of the days covered by the note - January 18 and January 21 - were scheduled workdays for Ms Rodriguez Morel.  Ms. Cochrane explained, for the first time, that to qualify for the three-day, medical-verification exception to occurrence and discipline, an employee's doctor's note had to cover three scheduled workdays.

62.     CAI's policy, as written, does <u>not</u> actually require medical verification for specifically three consecutive *work*-day absences in order to trigger occurrence exemption.  <u>See</u> Exhibit B.

63.     Ms. Rodriguez Morel emailed Ms. Morrison inquiring as to the accuracy of Ms. Cochrane's representation as to the three-day, medical verification rule.  She received no response.

### F.     <u>Ms. Rodriguez Morel's Supervisor Denies Her Discretionary Leave Due to Her Disciplinary Status</u>

64.     On Wednesday, January 23, 2019, Ms. Rodriguez Morel was again extremely sick at work with vomiting.  She contacted her physician who instructed her to she seek medical care.

65.     Ms. Rodriguez Morel consulted "Doug," the Manchester Human Resources employee, to obtain permission to leave work to see her doctor.  She explained to Doug that she <u>was pregnant and very ill with vomiting</u>, and asked if she would receive another occurrence if she left work to obtain medical care.  Doug responded that he would need to consult with Human Resources in Ohio before offering advice.

10

66      While waiting for Doug's response, Ms. Rodriguez Morel emailed both Ms. Guzman and Ms. Cochrane, to inform of her symptoms and to ask for permission to take any *vacation* leave available to her so that she might seek immediate medical attention.  <u>See</u> Exhibit L.

67.     Ms. Cochrane responded icily, "we are unable to approve your vacation request due to coverage.  Thank you."  <u>See</u> Exhibit M.

68.     Ms. Rodriguez Morel consulted with Ms. Guzman, who intimated that she thought an employee should seek necessary medical care regardless of work consequences.  Ms. Rodriguez Morel thus left work to obtain care.

69.     At the emergency room, Ms. Rodriquez Morel was treated for several hours for acute vomiting and was issued a doctor's note taking her out of work from that day, Wednesday, January 23, through Monday, January 28, 2019.  <u>See</u> Exhibit N.  Ms. Rodriquez Morel "called in" for this absence period on Thursday, January 24th only.

70.     Ms. Rodriguez Morel returned to work on Tuesday, January 29, 2019, promptly submitted her doctor's note to Ms. Cochrane, and she did <u>not</u> receive any discipline.

71.     However, Ms. Rodriguez Morel needed permission to attend an upcoming *well* doctor's visit for the purpose of adjusting her anxiety and depression medications in light of her pregnancy.

72.     Doug reported on the 29th to Ms. Rodriguez Morel that headquarters had relayed to him that because Ms. Rodriguez Morel was not FMLA eligible, she could face discipline if she left work for medical care without supervisor approval.  Doug therefore suggested to Ms. Rodriguez Morel that she seek supervisor approval for leave to attend her planned well doctor's visit; he recommended that Ms. Rodriguez Morel submit a request via "UltiPro," CAI's online, leave-request system,

73.     Ms. Rodriguez Morel submitted an UltiPro request, for her visit scheduled for January 31, 2019.  She received a response indicating that Ms. Cochrane was denying the request because she was "on attendance/production warning [and] not eligible for unapproved down time."  <u>See</u> Exhibit O.

74.     Out of concern for her and her child's health, Ms. Rodriguez Morel attended the visit anyway. She obtained a doctor's note, evidencing that her visit was related to her previously disclosed mental health disability.  See Exhibit P.   She anxiously submitted the note to Ms. Cochrane and waited for repercussions under the "no fault" attendance policy.

**G.     Ms. Cochrane and Ms. McNeil Seek to Terminate Ms. Rodriguez Morel For Her Pregnancy-Related Absences**

75.     Upon information and belief, after receiving the note, Ms. Cochrane and/or Ms. McNeil contacted Keith Carr, CAI's Human Resources Manager, to inquire whether Ms. Rodriguez Morel could be terminated under the "no fault" attendance policy due to her January 31, 2019 absence.

76.     Upon information and belief, Mr. Carr advised that if disabled, due to pregnancy or otherwise, Ms. Rodriguez Morel must be afforded reasonable accommodation to her disability, including accommodation with regard to her attendance.   Upon information and belief, Mr. Carr instructed that Ms. Rodriguez Morel should be given disability certification paperwork, for completion by her medical providers, in order to determine whether accommodation should be afforded.

77.     On Friday, February 1, 2019, at approximately 5 PM, Ms. Rodriguez Morel was again summoned by management.  Ms. McNeil ominously informed Ms. Rodriguez Morel that she knew Ms. Rodriguez Morel left work on January 31, 2019 without approval.  Yet, rather than terminating Ms. Rodriguez Morel (as Ms. Rodriguez Morel expected), Ms. McNeil handed over disability certification paperwork for completion by Ms. Rodriguez Morel's medical providers.

78.     Ms. Rodriguez Morel told Ms. McNeil she would bring the paperwork to her next doctor's visit scheduled for Friday, February 8, 2019.

**H.     Ms. Rodriguez Morel is Terminated Before She Can Submit to CAI Completed Disability Certification Paperwork**

79.     On Monday, February 4, 2019, Ms. Rodriguez Morel was again seriously ill with morning sickness.   She called in following CAI's call-in protocol, including by notifying of her pregnancy-related symptoms.

80.      On Tuesday, February 5, 2019, Ms. Rodriguez Morel was again so debilitated with headache, nausea and vomiting that she again sought care in an emergency room.   Ms. Rodriguez Morel called the CAI attendance line to advise of her pregnancy-related absence.

81.     Consistent with her previous three visits for emergency care, in as many weeks, Ms. Rodriguez Morel was again diagnosed with chronic headache and vomiting associated with pregnancy.  Ms. Rodriguez Morel was additionally diagnosed with a "placental abnormality in [the] second trimester."

82.     Ms. Rodriguez Morel's emergency room treatment provider removed her from work, starting that same day, Tuesday, February 5, until Saturday, February 9, 2019.  Ms. Rodriguez Morel was given a doctor's note stating the same.

83.     On the very next workday, Wednesday, February 6, Ms. Rodriguez Morel called in to the attendance line, to notify CAI that her doctor, due to her pregnancy-related symptoms, had removed her from work for the remainder of the workweek (including Thursday, February 7 and Friday, February 8)

84.     CAI boxed up Ms. Rodriguez Morel's personal effects in her work area on Thursday, February 7, 2019.  Ms. Rodriguez Morel learned this from her co-workers on Friday, February 8, 2019.

85.     On Monday, February 11, 2019, Ms. Rodriguez Morel was highly anxious reporting to work, afraid that she would be terminated, but she promptly reported with her doctor's note.

86.     Ms. Rodriguez Morel arrived to discover that her key card had been deactivated, and she was ushered to a meeting with Ms. Cochrane and Ms. McNeil.  The supervisors informed her that she had been terminated for "no call no show" on Thursday, February 7 and Friday, February 8, 2019.

87.     Ms. Rodriguez Morel protested that she <u>had</u> properly left a message on the attendance line, informing of her medically verified, pregnancy-related absences on February 6th, 7th and 8th.  She presented her doctor's note as evidence supporting the call, but Ms. Cochrane and Ms. McNeil refused to take the note, stating that the termination decision came from Human Resources and that there was nothing they could do.

88.     Ms. Rodriguez Morel, very upset and interested in vindicating her rights, requested a letter stating clearly that CAI had terminated her.  Ms. Cochrane and Ms. McNeil again referred Ms. Rodriguez Morel to Human Resources in Ohio.

89.     The supervisors presented Ms. Rodriguez Morel with a collection of items from her locker that conspicuously <u>did not include</u> her superior performance evaluations.  The supervisors next demanded that Ms. Rodriguez Morel leave the premises.

90.     That afternoon, Ms. Rodriguez Morel called Human Resources and left a voice mail message, stating that she had reported to work, that she had been terminated for "no call no show," and that she needed a letter confirming her termination.  Ms. Rodriguez Morel further stated that the termination was unjust because she had, in fact, called in to the attendance line on Monday the 4th, Tuesday the 5th and Wednesday 6th,  and that on the 6th she had advised that she would be absent, on February 7 and February 8, 2019, for pregnancy reasons, pursuant to a doctor's note,

91.     Nearly three hours later, a CAI Human Resource employee contacted Ms. Rodriguez Morel to inform her that Human Resources had made "a mistake."  The employee explained that Human Resources had reviewed its attendance line messages and discovered that Ms. Rodriguez Morel had, in fact, reported her absences for February 7 and February 8, 2019.   The employee added that she had already taken steps to reinstate Ms. Rodriguez Morel so that "it would be like nothing ever happened."  The employee also unsettlingly advised that CAI would "not hold against" Ms. Rodriguez Morel "as

14

an occurrence" her *February 11* absence, which, of course, was caused by *CAI's* "mistaken"
termination of Ms. Rodriguez Morel.

92.     Ms. Rodriguez Morel tearfully responded that under the circumstances she could not go on
"like nothing ever happened"; that the stress of not knowing whether she would be fired under the
attendance policy was unbearable for her in her condition; and that she had been extremely
embarrassed and humiliated by the "mistaken" termination.

93.     The Human Resources employee responded only that if Ms. Rodriguez Morel failed to report to
work the following workday, she would be marked as having abandoned her job and she would be
terminated.

94.     Ms. Rodriguez Morel replied that she needed to consider her situation.  She called the New
Hampshire Commission for Human Rights, extremely distraught, and after consultation with the
Commission decided not to return to CAI and to instead file a complaint of discrimination against CAI.
See Exhibit Q.

95.     CAI recruited and hired an administrative team member to replace Ms. Rodriguez Morel with
the same skills and qualifications as Ms. Rodriguez Morel.  See Exhibit R.

96.     Ms. Rodriguez Morel removed her charge from the Commission after 180 days in order to
proceed with a civil action, as is permitted by RSA 354-A:21-a.

97     Ms. Rodriguez additionally received a right to sue notice from the EEOC, see Exhibit S, and
this complaint is timely filed within 90 days of her receipt of the notice.

## COUNT I – Violation of RSA 354-A:7, VI (b)
## Denial of Leave of Absence Due to Temporary Disability due to Pregnancy

98.     The preceding paragraphs are re-alleged and incorporated herein.

99.     RSA 354-A:7, VI (b) provides "An employer shall permit a female employee to take leave of absence for the period of temporary physical disability resulting from pregnancy… or related medical conditions."

100.    CAI's "no fault" attendance policy conflicted with 354-A:7, VI (b).  Instead of "permitting" employees to take leave for temporary disability resulting from pregnancy and related medical conditions, the policy *penalized* employees for taking such leave.  Specific to this case, CAI supervisors applied the policy to count "occurrences" and issue discipline to Ms. Rodriguez Morel for her absences due to pregnancy-related temporary disability.

101.    The facts are as follows.  As of late December 2018, Ms. Rodriguez Morel was rendered unable to work, by headache, nausea, vomiting, abdominal pain and bleeding, all due to her pregnancy and medical conditions related to her pregnancy.  She was temporarily disabled due to pregnancy or related medical conditions.

102.    Ms. Rodriguez Morel formally notified Ms. Cochrane of her temporary disability due to pregnancy on or about December 31, 2018.

103.    Ms. Rodriguez Morel's temporary disability due to pregnancy caused her to be absent from work for several days in late December 2018, several days in January 2019, and several days m February 2019.

104.     Though Ms. Rodriguez Morel sufficiently notified of her pregnancy-related temporary disability beginning in late December 2018 and continuing until her termination on February 11, 2019, Ms. Cochrane applied CAI's "no fault" attendance policy to count occurrences for Ms. Rodriguez Morel's absences which she knew to be due to her temporary disability.  On the basis of these occurrences, Ms. Cochrane issued Ms. Rodriguez Morel first, second and final written warnings.

105.    By applying its "no fault" policy to take repeated disciplinary action against Ms. Rodriguez

Morel, CAI violated NH RSA 354-A:7, VI (b) and caused Ms. Rodriguez Morel significant emotional

harm resulting in her constructive discharge.

106.    To sustain a claim for constructive discharge under Title VII, the plaintiff must prove that her

employer imposed "working conditions so intolerable that a reasonable person would feel compelled to

forsake his job rather than to submit to looming indignities." Landrau-Romero v. Banco Popular De

Puerto Rico, 209 F.3d 10 (1st Cir. 2000).   The New Hampshire Supreme Court finds Title VII cases

instructive in evaluating a claim of constructive discharge under New Hampshire law. See Order, Anna

Tilton & Andrew Christie v. N.H. Sec. of State, No. 2011-CV-407 at p. 8 n. 1 (Merrimack Super. Ct.)

(April 27, 2012).

107.    CAI's stated reason for terminating Ms. Rodriguez Morel, "no call no show," was directly

connected with her pregnancy-related absences in February 2019, and when CAI offered to reinstate

Ms. Rodriguez Morel, it failed to communicate any changes to its attendance and discipline policies to

accommodate her pregnancy.  Rather, CAI suggested to Ms. Rodriguez Morel that it would *persist* in

issuing her pregnancy-related "occurrences," up to termination, when it advised, without any

compunction, that it would not "hold against" her an "occurrence" that *it* had caused her by

terminating her.

108.    Ms. Rodriguez Morel, who remained pregnant and suffering from pregnancy-related medical

conditions at the time of CAI's disingenuous offer of reinstatement, reasonably foresaw looming

discipline and termination by application of CAI's "no fault" policy, and she thus reasonably felt

compelled to forsake employment at CAI.

109.    The Defendant's conduct was wanton, malicious and oppressive and therefore justifies an

award of liberal, or enhanced, compensatory damages.  Stewart v. Bader, 154 N.H. 75, 87 (2006).

**COUNT II – Unlawful Employment Practice Under 42 U.S.C. § 2000e-2(a)(1) and RSA 354-A:7, VI (c)**
**Discrimination in Terms, Conditions, and Privileges of Employment due to Sex**

110.   The preceding paragraphs are re-alleged and incorporated herein.

111.   It is an unlawful for an employer to discriminate against an employee in terms, conditions, and privileges of employment because of the employee's sex.  See 42 U.S.C § 2000e-2(a)(1).  See RSA 354-A:7,VI (c).

112   "Because of sex" includes because of "pregnancy, childbirth, or related medical conditions." See 42 U.S.C § 2000e (k).   See RSA 354-A:7, VI (a).

113.   CAI's "no fault" attendance policy incorporated the term, condition, or privilege of employment, of *avoiding* "occurrences" (and discipline resulting from occurrences) if employees fulfilled certain conditions.  For example, if an employee met the condition of being absent for two consecutive workdays for the same reason, an employee could avoid an occurrence being counted for each absence.  Similarly, if an employee met the condition of medical need for absence for "three consecutive days or more," and provided medical verification or submitted a request for leave for the absence, an employee could avoid any occurrence being counted at all.

114.   Notwithstanding that Ms. Rodriguez Morel met these conditions and qualified for exception to occurrences under the policy, CAI nevertheless counted occurrences for her, its female and pregnant employee, and issued first, second, and final written warnings based on these occurrences.

115.   For example, after Ms. Rodriguez Morel notified Ms. Cochrane of her pregnancy and pregnancy-related symptoms on or about December 31, 2018 and again on January 8, 2019, and after she notified *headquarters* of her pregnancy and pregnancy-related symptoms on the "call in" line on January 9, 2019, CAI issued Ms. Rodriguez Morel a first written warning based on 2 occurrences counted for absences on December 27 and 28, 2018, when it should have counted just 1 occurrence for these dates per its policy of counting just one occurrence for two workdays missed for the same reason.

116.    CAI also issued a second written warning based on an occurrence counted for Ms. Rodriguez

Morel's absences on January 8, 9, and 10, 2019, though <u>no</u> occurrence should have been counted

because Ms. Rodriguez Morel had medical need for these absences of "three consecutive days or

more," and she requested leave for these days, on the attendance line on January 9, 2019, with medical

verification for the leave in hand.

117.    CAI additionally issued a final written warning based on an occurrence counted for Ms.

Rodriguez Morel's absences on January 18 and 21, 2019, even though she requested on the attendance

line a leave of absence from January 18 through January 21, 2019 (*four* days of medical need), and she

submitted to CAI medical verification for her inability to work for these four days.

118.    CAI discriminated against Ms. Rodriguez Morel on the basis of her sex/pregnancy by denying

her, as opposed to its other employees, the term, condition or privileged of employment of avoiding

discipline under its "no fault" attendance policy.  Ms. Rodriguez Morel has stated a prima facie case

for disparate treatment, i.e. "that she belongs to the protected class, that she sought accommodation [in

the form of exception to discipline], that the employer did not accommodate her, and that the employer

<u>did</u> accommodate others similar in their ability or inability to work."  <u>Young v. United Parcel Serv.,</u>

<u>Inc.,</u> 135 S. Ct. 1338, 1354 (2015)(emphasis added).

119.     The discrimination caused Ms. Rodriguez Morel significant emotional harm and resulted in her

constructive discharge.  Ms. Rodriguez reasonably understood as of February 11, 2019 when she made

the choice to forsake her job, that she would continue to accrue occurrences and receive discipline

under the "no fault" attendance policy due to her pregnancy, and that the minimal protections from

termination that *should* <u>have been available to her under the "no fault" policy were not actually</u>

<u>available to her as a pregnant employee.</u>

120.    The Defendant's conduct was wanton, malicious and oppressive and therefore justifies an

award of liberal, or enhanced, compensatory damages.  <u>Stewart v. Bader</u>, 154 N.H. 75, 87 (2006).

**COUNT III – 42 U.S.C. § 12112(b)(5)(A) and RSA 354-A:7, VII (a)**
**Failure to Make Reasonable Accommodation to Substantially Limiting Pregnancy-Related**
**Impairment**

121.    The preceding paragraphs are re-alleged and incorporated herein.

122.    Title 1 of the ADAA (42 U.S.C. § 12112(b)(5)(A)) and RSA 354-A: 7, VII (a) require employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an … employee….".

123.    To state a claim for failure to make reasonable accommodation under the ADAA, the plaintiff must allege that "(a) she is disabled within the ADA's definition; that (b) she could perform the job's essential functions either with or without a reasonable accommodation; and that (c) the employer knew of her disability, yet failed to reasonably accommodate it."  See Lang v. Wal-Mart Stores East, L.P., 813 F.3d 447, 454 (1st Cir. 2016).

124.    An employee is "disabled" within the meaning of the ADAA if she suffers any physical or mental impairment that substantially limits a major life activity.  See 29 CFR § 1630.2 (g).

125.     Physical impairment includes any "physiological … condition" affecting a "body system," including the "digestive" and "reproductive" systems.  See 29 CFR § 1630.2 (h).  Physical impairment also includes "premature rupture of membranes, [and] vaginal bleeding."  Hernandez v. City of Hartford, 959 F. Supp. 125, 130 (D. Conn. 1997).

126.    "Substantially limits" as used in the ADAA is construed broadly in favor of finding "disability." See 29 CFR § 1630.2 (j)(1).  The effects of an impairment lasting or expected to last fewer than six months can be "substantially limiting."  Id.

127.     "Major life activity" is defined as the operation of a major body function including digestion and reproductive function.  See 29 CFR § 1630.2 (i).  Interacting with others, concentrating, and working are also identified "major life activities" under the ADA.  Id.

128.    EEOC interpretive guidance also establishes that "pregnancy-related impairment that substantially limits a major life activity is a disability under the first prong of the [ADAA disability] definition." See 29 CFR Appendix to Part 1630 - Interpretive Guidance on Title I of the Americans With Disabilities Act (discussing Section 1630.2(h) Physical or Mental Impairment)(emphasis added).

129.    Ms. Rodriguez Morel was "disabled" where for months she suffered the confluence of severe and recurring nausea and vomiting, migraine, threatened miscarriage, vaginal bleeding, and placental abnormality in the second trimester, affecting the operation of her digestion and reproduction major body functions.   These pregnancy related conditions together also substantially limited her ability to engage in the major life activities of concentrating, interacting with others, and working.

130.    Ms. Rodriguez Morel was capable of performing the essential functions of her job with accommodation, as demonstrated by the superior performance reviews she received prior to disclosing her pregnancy but which were notably not released to her at her termination meeting.

131.    Ms. Rodriguez Morel disclosed her pregnancy-related impairment to multiple supervisors at CAI's Manchester location as of the close of December 2018, and she informed CAI headquarters of her conditions on or before January 9, 2019.  Ms. Rodriguez Morel also repeatedly asked her supervisors and human resources representatives at the Manchester office, and human resources representatives in Ohio, for the reasonable accommodation of exception to discipline under the "no fault" attendance policy for her disability related absences.

132.     CAI refused to afford her this reasonable accommodation though it would have presented no undue burden to CAI.  This refusal resulted in significant emotional harm to Ms. Rodriguez Morel and ultimately her constructive discharge.  Ms. Rodriguez Morel had repeatedly asked multiple CAI supervisors and human resources employees for accommodation under CAI's attendance policy, and she was repeatedly denied, such that she could reasonably foresee looming discipline, emotional distress, and ultimate termination if she accepted reinstatement to her position at CAI.

133.    The Defendant's conduct was wanton, malicious and oppressive and therefore justifies an award of liberal, or enhanced, compensatory damages.  Stewart v. Bader, 154 N.H. 75, 87 (2006).


**COUNT IV – Unlawful Employment Practice Under 42 U.S.C. § 2000e-2(k)(1)(A)(i)**
**Use of an Employment Practice that Caused a Disparate Impact Based on Sex/Pregnancy**

134.    The preceding paragraphs are re-alleged and incorporated herein.

135.    Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." Rodriguez v. United States, 852 F.3d 67, 75 (1st Cir. 2017).   Under Title VII, a claim for "disparate impact" covers "practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities."  Id. (citing Ricci v. DeStefano , 557 U.S. 557, 577, (2009)).

136.    To make a prima facie showing of disparate impact, a plaintiff starts by identifying the employment practice being challenged.  Jones v. City of Boston, 752 F.3d 38, 46 (1st Cir. 2014).   A plaintiff must then show that the identified practice causes a disparate impact on the basis of sex/pregnancy.  See id. (citing 42 U.S.C. § 2000e–2 (k)(1)(A)(i)).

137.    CAI's "no fault" attendance policy, though facially neutral, caused a disparate impact to female, pregnant employees, including Ms. Rodriguez Morel.

138.    Under the policy, an employee received an "occurrence" for a single workday absence regardless of illness, medical need, or temporary disability causing the absence from work.  See e.g. Exhibits F and G.

139.    CAI issued Ms. Rodriguez Morel a final written warning after only 5.5 occurrences, indicating that under the "no fault" policy an employee faced final warning for as few as 5.5 absences.  See Exhibit K.

140.    CAI also issued Ms. Rodriguez Morel: a first warning after it counted 3.5 occurrences, see Exhibit F; a second warning after an additional counted occurrence, see Exhibit G; and a final written warning after just one more occurrence, see Exhibit K.  This demonstrated that under the "no fault" policy, once an employee was placed on warning status for having greater than three "occurrences," three subsequent "occurrences" would bring about termination.

141.    Under the policy, then, an employee could be terminated for being absent from work for just six days total, even with valid medical excuse for each absence.

142.    While six days of permitted leave under the policy undoubtedly would accommodate some temporary disabilities, the policy falls considerably short of the period generally recognized in human experience as the respite needed for a woman to carry and bare a child.   See Abraham v. Graphic Arts Intern. Union, 660 F.2d 811, 819 (D.C. Cir. 1981).   In short, a six-day absolute ceiling on leave portends a drastic effect, or impact, on female, pregnant employees, an impact no male would ever encounter.  See id.

143.    Ms. Rodriguez Morel, herself, suffered repeated adverse disciplinary action due to the disparate impact of CAI's no fault attendance policy on pregnant employees.  She suffered emotional losses and, ultimately, constructive discharge due to the impact of the policy.

144.    Ms. Rodriguez Morel was constructively discharged where, at the time she left employment on February 11, 2019: she remained pregnant and with pregnancy related medical conditions; she had received repeated discipline under the "no fault" policy due to her pregnancy and pregnancy-related medical conditions; the policy had caused her significant emotional distress over attending even a basic well visit for her and her baby; and CAI had failed to make any concessions to her pregnancy under its "no fault" (or 6-maximum-absences) attendance policy.  She reasonably foresaw looming discipline, emotional distress, and termination if she accepted reinstatement to her position at CAI.

## COUNT V – Wrongful Discharge
## Wrongful Discharge for Performing an Act Encouraged by RSA 354-A:7, VI (b)

145.    The preceding paragraphs are re-alleged and incorporated herein.

146.    A plaintiff states a claim for wrongful discharge in two parts.   First, the plaintiff must show that the defendant was motivated by bad faith, malice, or retaliation in terminating the plaintiff's employment.  Cloutier v. Great Atlantic & Pac. Tea Co., Inc., 121 N.H. 915, 922 (1981).   Second, the plaintiff must demonstrate she was discharged because she performed an act that public policy would encourage.  Id.

147.    As discussed supra, a plaintiff is "constructively" discharged, including for a wrongful discharge claim, where her "working conditions [are] so intolerable that a reasonable person would feel compelled to forsake her job rather than to submit to looming indignities."

148.    CAI was motivated by bad faith, malice, or retaliation in wrongfully discharging the plaintiff, as shown by the following.  CAI disparately applied exceptions to accruing occurrences under its "no fault" attendance policy, so that Ms. Rodriguez Morel accrued more occurrences than she should have under CAI's policy.   Moreover, when it became clear that Ms. Rodriguez Morel might nevertheless avoid termination under the policy, by obtaining disability certification which would allow her to take leave from work and would effectively bar her termination under the policy, CAI immediately terminated Ms. Rodriguez Morel for a shifted policy reason relating to her pregnancy absences, "no call, no show."  CAI did this despite that Ms. Rodriguez Morel had, irrefutably, actually called in to report the pregnancy-related absences used to terminate her, just as she had for her multiple, pregnancy-related absences in the months preceding her termination.

149.    Additionally showing bad faith is CAI's failure to deliver Ms. Rodriguez Morel's superior performance evaluations, when it delivered her other personal effects at her termination meeting. CAI cherry picking and removing the evaluations shows its consciousness of its liability in terminating a

pregnant and disabled Ms. Rodriguez Morel <u>before</u> she had fair opportunity to submit her disability accommodation paperwork.

150.    Lastly, CAI's callous statement to a distraught Ms. Rodriguez Morel, suggesting that it could, but would not, discipline her for the absence that <u>it</u> caused by humiliatingly terminating her, shows bad faith, retaliation, or malice.

151.    Ms. Rodriguez Morel performed an act that public policy would encourage.  She took the leave that RSA 354-A:7, VI (b) encourages pregnant women to take.  Taking leave is an "act encouraged by public policy" where an employee has an enforceable right to take the leave under state law.  <u>See Gage v. Rymes Heating and Oils, Inc.</u>, Memorandum and Order March 1, 2016, 14-cv-480-PB (D.N.H)(citing <u>Faulkner v. Mary Hitchcock Mem'l Hosp.</u>, 2013 DNH 152).

152.    Though CAI purported to terminate for "no call no show," CAI actually terminated Ms. Rodriguez Morel for taking pregnancy leave encouraged by public policy.  At the time of the termination, CAI was patently unhappy with Ms. Rodriguez Morel for taking pregnancy-related leave; it had issued her first, second and final written warnings to her for taking the leave <u>in just the few weeks immediately preceding the termination</u>.

153.    Alternatively, CAI constructively discharged Ms. Rodriguez Morel.  When CAI falsely offered Ms. Rodriguez Morel reinstatement, communicating that it nevertheless would continue to take adverse action against her for taking pregnancy-related temporary disability leave, up to and including termination, her termination loomed such that she reasonably forsook the opportunity of reinstatement.

154.    The Defendant's conduct was wanton, malicious and oppressive and therefore justifies an award of liberal, or enhanced, compensatory damages.  <u>Stewart v. Bader</u>, 154 N.H. 75, 87 (2006).


**<u>COUNT VI – 42 U.S.C. §§ 12112(a), 2000e-2(a)(1) and RSA 354-A:7, I and 19</u>**
**<u>Discriminatory/Retaliatory Discharge Due to Sex and/or Disability</u>**

155.    The preceding paragraphs are re-alleged and incorporated herein.

156.    It is unlawful for an employer to discriminate against an employee by discharging her due to disability, or pregnancy or related medical conditions.  See 42 U.S.C. §§ 12112(a), 2000e(k) and 2000e-2(a)(1).  See also RSA 354-A:7, I and VI (a).

157.    It is also unlawful for an employer to retaliate against an employee, by discharging the employee, for engaging in the protected activity of requesting accommodation to disability.  See e.g. Murray v. Warren Pumps, LLC, 821 F.3d 77, 87 (1st Cir. 2016).

158.    To state a claim for discharge on the basis of disability or pregnancy, in violation of the ADAA, Title VII, or RSA 354-A:7, the employee must allege, she "(1) was within a protected class; (2) met the employer's legitimate performance expectations; (3) was actually or constructively discharged; and (4) was replaced by another with similar skills and qualifications." Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 612 (1st Cir. 2000).

159.    To state a claim for retaliation for engaging in the protected activity of requesting accommodation under the ADAA and RSA 354-A:7, VII (a), an employee must plead that she requested accommodation, suffered an adverse action, and that there was a causal connection between that protected activity and the adverse action taken by the employer. See Murray, 821 F.3d at 87.

160.    As a matter of law, close temporal proximity between protected conduct and termination satisfies the causal connection requirement for retaliation claims.

161.    The following facts support that CAI discriminatorily and/or retaliatorily discharged Ms. Rodriguez Morel.

162.    Ms. Rodriguez Morel was pregnant and disabled with disclosed substantially limiting pregnancy-related impairment, as well as anxiety and depression, in the relevant time-period of late December 2018 through February 11, 2019.

163.    Alternatively, CAI regarded Ms. Rodriguez Morel as disabled when it gave her "disability" paperwork for completion.

164.    Ms. Rodriguez Morel met her employer's legitimate work expectations as shown by her superior performance evaluations that were withheld from her at her termination on February 11, 2019. There is also further <u>no</u> evidence of poor performance in Ms. Rodriguez Morel's personnel file subsequently produced to her.

165.    CAI terminated Ms. Rodriguez Morel asserting a <u>false</u> reason: "no call no show."  The "no call no show" reason was pretext for the CAI's discriminatory and retaliatory reasons for termination.

166.     CAI eventually <u>admitted</u> that its asserted "no call no show" reason for termination was <u>false</u>.

167.     CAI admitted the falseness of its original, stated reason for termination when it attempted to reverse its actually discriminatory and retaliatory termination decision, <u>after</u> Ms. Rodriguez Morel suggested she might sue CAI (by demanding that CAI provide her a termination letter).

168.    At Ms. Rodriguez Morel's termination meeting in Manchester, her supervisors conspicuously made <u>no</u> attempt, before effectuating her termination, to confirm with CAI Human Resources in Ohio that Ms. Rodriguez Morel had indeed "no called no showed," even where Ms. Rodriguez Morel vigorously protested that she had called in, <u>as was her proven pattern or practice</u>.  This lack of basic courtesy to Ms. Rodriguez Morel demonstrates that CAI was truly inconvenienced by Ms. Rodriguez Morel's pregnancy, her disability, her request for accommodation, and the likelihood that she indeed would legally qualify for intermittent leave as a disability accommodation.  CAI accordingly terminated Ms. Rodriguez Morel <u>just approximately 10 days after identifying her as a potential candidate for disability accommodation.</u>

169.    The very close proximity between the discussion surrounding accommodation to Ms. Rodriguez Morel's pregnancy and disability, held on February 1, 2019, and her termination on February 11, 2019, shows a causal connection between Ms. Rodriguez Morel's request for accommodation and her termination.

170.     Upon information and belief, based on Exhibit R, Ms. Rodriguez Morel was replaced by a worker with skills and qualifications similar to hers.

171.     Ms. Rodriguez Morel may be considered to have been constructively discharged where her work conditions were so intolerable that she reasonably forsook CAI's reinstatement offer.  Due to her pregnancy, related medical conditions, disclosure of her condition to her supervisors, and attempts to obtain accommodation to her pregnancy-related disability, and to a lesser extent to her mental health disability, Ms. Rodriguez Morel found herself repeatedly and unjustifiably disciplined, perpetually in a state of having to choose between her and her child's health and her income, and she was ultimately terminated from her position.  CAI further communicated in offering reinstatement that it would persist in taking adverse action against Ms. Rodriguez Morel due to her pregnancy and disability.

172.     The Defendant's conduct was wanton, malicious and oppressive and therefore justifies an award of liberal, or enhanced, compensatory damages.  Stewart v. Bader, 154 N.H. 75, 87 (2006).

WHEREFORE, the Plaintiff, Juliana Rodriguez Morel, respectfully prays that this Honorable Court:

     A.     Schedule this matter for trial by jury, and after trial;

     B.     Order employment of the Plaintiff after trial;

     C.     Award the Plaintiff damages for her economic losses, including without limitation lost wages (back and front pay), lost employment benefits, and lost earning capacity;

     D.     Award the Plaintiff compensatory damages, including without limitation emotional distress, humiliation, inconvenience and loss of enjoyment of life;

     E.     Award enhanced compensatory damages;

     F.     Award the Plaintiff punitive damages;

     G.     Award the Plaintiff his reasonable attorney's fees;

     H.     Award the Plaintiff interest and costs;

     I.     Award all other damages available to the Plaintiff at law, and

28

J.      Award the Plaintiff such other relief as this court deems equitable and just.

Respectfully submitted,

JULIANA RODRIGUEZ MOREL,

By her attorneys,

DOUGLAS, LEONARD & GARVEY, P.C.

Date:  January 15, 2021          By:   /s/ <u>Megan Douglass</u>
                                       Megan Douglass #19501
                                       14 South Street, Suite 5
                                       Concord, NH 03301
                                       (603) 224-1988
                                       <u>mdouglass@nhlawoffice.com</u>